IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| BAR T TIMBER, INC.,<br><br>                    Plaintiff,<br><br>    v.<br><br>PACIFIC FIBRE PRODUCTS and<br>WEYERHAEUSER NR COMPANY,<br><br>                    Defendants. | CV-13-30-BLG-CSO<br><br>**ORDER ADDRESSING<br>PENDING MOTIONS** |

Plaintiff Bar T Timber, Inc. ("BTT") claims that Defendants Pacific

Fibre Products ("Pacific Fibre") and Weyerhaeuser NR Company

("Weyerhaeuser") negligently and fraudulently misrepresented the

weight of logs BTT sold to Weyerhaeuser, resulting in a substantial

underpayment to BTT.  *See Cmplt (ECF 1)[1]*.  BTT also claims that

Weyerhaeuser breached their agreements.  *Id.*

---

[1]The ECF citation refers to the document as it is numbered in the
Court's electronic filing system.  Citations to page numbers refer to
those assigned by the ECF system.

Now pending are the following motions:

1.   Pacific Fibre's Motion to Dismiss for Lack of Personal Jurisdiction *(ECF 5)*;

2.   Weyerhaeuser's Motion to Dismiss or to Transfer *(ECF 8)*; and

3.   BTT's Motion to Dismiss Pacific Fibre Should this Court Rule it Does Not Have Long Arm Jurisdiction *(ECF 28)*.

Having considered the parties' arguments and submissions, the Court rules as set forth below.

## I.   <u>BACKGROUND</u>

BTT is a Montana corporation that buys and sells timber.  *Aff. Dan Tudor (ECF 18) at 1.*  In August 2011, BTT agreed to sell Montana-harvested lodgepole pine logs to Weyerhaeuser, a Washington corporation with its principal place of business located in Federal Way, Washington.  *Id. at 2*; *Dec. Pete Foley (ECF 10) at 1-2.*  Under this agreement, Weyerhaeuser agreed to purchase the logs from BTT at a rate of "$32.00 per green ton fob rail car."  *ECF 10 at 2; ECF 10-1.*  The agreement was effective August 3, 2011, through December 31, 2011, but the parties operated under the agreement through April 2012.  *ECF 10-1; ECF 1 at 2.*  Pete Foley ("Foley"), a Buyer in Weyerhaeuser's Fiber

Supply Department, and Dan Tudor ("Tudor"), BTT's owner, negotiated the contract.  Foley states that he negotiated the contract from his Washington office, and has never traveled to Montana to meet with Tudor regarding their business relationship.  *ECF 10 at 2.*  Foley also states that Tudor has visited him in Washington to discuss their business relationship "on more than one occasion."  *Id*.

In June 2011, Weyerhaeuser contracted with Pacific Fibre, a Washington corporation with its principal place of business in Longview, Washington, to weigh and chip the logs Weyerhaeuser received from multiple suppliers, including BTT.  *Aff. Donald R. Lightfoot (ECF 7) at 2.*  Weyerhaeuser and Pacific Fibre executed a Memorandum of Understanding ("MOU") to "establish the terms and conditions under which Pacific Fibre [ ] and Weyerhaeuser [ ] manage fee timber owned by Weyerhaeuser that is received, processed and stored by Pacific Fibre [ ]."  *ECF 10-2.*  BTT is not a party to, nor referenced in, the MOU.  *See id.*

BTT shipped the logs it sold to Weyerhaeuser to Pacific Fibre's business location in Longview, Washington.  *ECF 18 at 2.*  Pursuant to the MOU, Pacific Fibre debarked and chipped the logs, and furnished the

chips to Weyerhaeuser.  *ECF 7 at 2.*  All of the chipping and weighing activity by Pacific Fibre took place at its business premises in Washington.  *Id.*

Pacific Fibre weighed the railcars on which the logs arrived, both loaded and empty, and calculated the difference between the loaded and unloaded weights.  *ECF 7 at 3.*  Pacific Fibre utilized the services of UNITEC Corporation to test the accuracy of its rail scale and perform maintenance when necessary.  *ECF 10 at 2-3; ECF 10-3.*  After weighing the loads, Pacific Fibre sent emails to Weyerhaeuser and BTT showing the railcar weights.  *ECF 7 at 3.*  According to Tudor, BTT received approximately 100 such emails from Pacific Fibre between September 2010 and June 2012.  *ECF 18 at 2.*  Weyerhaeuser paid BTT based on the weights established by Pacific Fibre.  *ECF 10 at 2.*

Pacific Fibre personnel met with BTT personnel on one occasion for a lunch meeting in Longview, Washington.  *ECF 7 at 3.*  According to Donald R. Lightfoot ("Lightfoot"), Pacific Fibre's Controller, this meeting and the emails communicating load weights were Pacific Fibre's only contacts with BTT during the course of Pacific Fibre's contract with

Weyerhaeuser.  *ECF 7 at 4.*  Pacific Fibre has had no other business

dealings with Montana residents, does not sell product or advertise in

Montana, has no offices, facilities or employees in Montana, and is not

registered with the Montana Secretary of State.  *ECF 7 at 4.*

BTT's Complaint alleges: (1) negligent misrepresentation by Pacific

Fibre, alleging that Pacific Fibre "[c]onsistently under-weighed the loads

of logs delivered" to Pacific Fibre, resulting in an underpayment by

Weyerhaeuser of approximately $114,000, *ECF 1 at 2-3*; (2) "fraudulent

representation" with actual malice by both Defendants, alleging

Defendants were aware of, and intended BTT to rely on, false and

misleading load weights, *ECF 1 at 3-4*; and (3) breach of contract by

Weyerhaeuser, alleging that Weyerhaeuser did not pay for the actual

load weights of the logs, and that Weyerhaeuser failed to purchase

another 100 loads of logs under a separate verbal agreement, *ECF 1 at 5.*

## II.   PACIFIC FIBRE'S MOTION TO DISMISS

### A.   Parties' Arguments

Pacific Fibre argues that this Court lacks both general and specific

personal jurisdiction over it.  First, Pacific Fibre argues that it is not

"found within" Montana because it: (1) has never been physically present in the state, (2) does not have continuous and systematic contacts with the state, (3) maintains no offices, facilities, or employees in Montana, (4) does not have business dealings with Montana residents, and (5) does not sell products or advertise in Montana. *ECF 6 at 8.*

Second, Pacific Fibre argues that specific jurisdiction under Montana's long arm statute is also lacking. Pacific Fibre argues that its interstate communications with BTT pursuant to a contract performed in Washington are insufficient to constitute the transaction of business in Montana. *Id. at 10.* Pacific Fibre also argues that the alleged tort accrued, if at all, in Washington and not in Montana because the logs were weighed in Washington,    *Id. at 11-12.*

Finally, Pacific Fibre contends that because jurisdiction does not lie under Montana statute, the Court need not address due process considerations. *Id. at 13.* If it does, Pacific Fibre argues, the Court should conclude that the exercise of jurisdiction would be unreasonable and offend the requisites of due process. *Id. at 13-14.*

In response, BTT argues that Pacific Fibre's acts resulted in the

accrual of a tort in Montana, and therefore Pacific Fibre is subject to specific jurisdiction under Rule 4(b)(1)(B), Mont. R. Civ. P. *Pltf's Response (ECF 17) at 3.* BTT contends that Pacific Fibre's emails were fraudulent statements intentionally sent into Montana, and that this intentional tort warrants the exercise of jurisdiction over Pacific Fibre. *Id. at 5-7.* BTT also argues that, due to the nature of these communications, the exercise of personal jurisdiction would not offend due process. *Id. at 5.*

### B.   <u>Discussion</u>

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff must demonstrate that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, Pacific Fibre's motion is based on written materials rather than an evidentiary hearing, BTT need only make a prima facie showing of jurisdictional facts. *Id.* "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,'... uncontroverted allegations in the complaint must be taken as true." *Id.* (citations omitted). Conflicts between parties over statements contained

in affidavits must be resolved in the plaintiff's favor. *Id.*

Where no federal statute governs personal jurisdiction, the district court must apply the law of the state in which the district court sits. *Id.* Montana "applies a two-part test to determine whether a Montana court can exercise personal jurisdiction over a non-resident defendant." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003). First, the Court must ascertain whether personal jurisdiction exists under Montana's long-arm statute; second, the Court must determine whether the exercise of such personal jurisdiction conforms with the traditional notions of fair play and substantial justice embodied in the due process clause. *Id.* "If personal jurisdiction does not exist under the first part of the test, further analysis under the second part of the test is unnecessary." *Id.*

Montana's long-arm statute, Rule 4(b)(1) of the Montana Rules of Civil Procedure, provides, in relevant part:

> All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:

...

> (B)   the commission of any act which results in accrual within
>       Montana of a tort action;

While Rule 4(b)(1) embodies principles of both general and specific jurisdiction, BTT does not contend that this Court has general jurisdiction over Pacific Fibre.  *See ECF 17 at 2, FN 1.*  As noted above, BTT asserts only that Pacific Fibre is subject to specific jurisdiction under Rule 4(b)(1)(B) because its actions resulted in the accrual of a tort action in Montana.

The Montana Supreme Court has consistently found that interstate communications alone are insufficient to constitute the accrual of a tort action within the state for purposes of personal jurisdiction.  In *Bird v. Hiller*, 892 P.2d 931 (Mont. 1995), the court stated:

> While it is true that [defendant] did send the contingency fee
> agreement, and other letters to the [plaintiffs] at [their] office in
> Helena, we have previously held that jurisdiction is not acquired
> through interstate communications pursuant to a contract to be
> performed in another state.

*Bird*, 892 P.2d at 934.  Similarly, in *Threlkeld v. Colorado*, 16 P.3d 359 (Mont. 2000), the Montana Supreme Court found that the alleged torts accrued in Colorado, holding that "it is clear that the Threlkelds (sic)

deceit and fraud claims relate entirely to services to be performed in Colorado and the mere existence of interstate communications relating to those services does not provide a basis for personal jurisdiction over CSU." *Id.* at 365.

Finally, in *Bi-Lo Foods, Inc. v. Alpine Bank, Clifton*, the Court stated that the "focus must be on the place where the services are rendered." *Id.* And, because "[a]ll acts giving rise to Bi-Lo's claims of negligence and breach of warranty occurred in Colorado[,]" the Colorado bank's activities did not result in the accrual of a tort action in Montana. *Id.* at 159. Accordingly, the court affirmed dismissal based on lack of personal jurisdiction.

Here, the alleged torts of negligent misrepresentation and fraud against Pacific Fibre accrued in Washington. All of Pacific Fibre's alleged misconduct involves services it provided in Washington – Pacific Fibre received the logs at its Washington business premises, weighed the loaded and empty rail cars in Washington, and calculated the weight of the logs in Washington. While BTT may have experienced the effects of Pacific Fibre's actions in Montana, the "injury-causing event" (alleged

under-weighing log loads) occurred in Washington.  *See Bi-Lo Foods*.

Furthermore, no Pacific Fibre representative traveled to or conducted business in Montana in connection with these operations.  The only contact connecting Pacific Fibre to Montana are the emails it sent to Weyerhaeuser and BTT communicating the load weights.  As the Montana Supreme Court has made clear, this contact alone is insufficient to establish personal jurisdiction over Pacific Fibre.  *See Bird*, 892 P.2d at 934.

BTT relies on authority from the First Circuit and from Missouri for the proposition that sending false and misleading documents into a state subjects a defendant to that state's personal jurisdiction.  These cases are not binding on this Court, do not construe Montana law, and, to the extent they conflict with controlling Montana and Ninth Circuit authority, have little persuasive value.

Finally, BTT cites MCA § 27-2-203, the statute of limitations for actions based on fraud or mistake, for the proposition that the torts of negligent misrepresentation and fraud accrue upon discovery of the fraud, and therefore the alleged tort here accrued in Montana.  The

Montana Supreme Court has specifically rejected this reasoning.  In

*Bird*, the court stated:

> While in some cases it may be true that the *statute of limitations* does not begin to run until the injured party knows or should have known of the injury, § 27-2-102(3), MCA, this principle is not applicable in resolving the question of *where* the cause of action arose for purposes of jurisdiction.

*Bird*, 892 P.2d at 934 (emphasis in original).  *Bird* instead held that the

torts accrued outside Montana based on the defendant's out-of-state

conduct.

Based on the foregoing, the Court concludes that the alleged tort

did not accrue in Montana, and therefore Montana's long-arm statute

does not confer personal jurisdiction over Pacific Fibre.  Both general

and specific jurisdiction lacking, the analysis ends and the Court need

not address the question of due process.  *Bi-Lo Foods*, 955 P.2d at 159.

But Pacific Fibre's motion to dismiss must be considered in conjunction

with Weyerhaeuser's motion to dismiss or transfer, as follows.

## III.   <u>WEYERHAEUSER'S MOTION TO DISMISS OR TRANSFER</u>

### A.   <u>Parties' Arguments</u>

Weyerhaeuser first argues that venue is improper in this District

because: (1) under 28 U.S.C. § 1391(b)(1), not all defendants reside in Montana because Pacific Fibre is not subject to this Court's jurisdiction; and (2) under 28 U.S.C. § 1391(b)(2), a substantial part of the events giving rise to BTT's claims occurred in Washington rather than Montana.  *ECF 9 at 5-8.*  Venue being improper in Montana, Weyerhaeuser argues that the Court should either dismiss the action or transfer the case to the Western District of Washington pursuant to 28 U.S.C. § 1406(a).  *Id. at 8.*

Second, Weyerhaeuser argues that the Court should transfer this case to the Western District of Washington for the convenience of the parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. § 1404(a).  *Id. at 8-10.*

In response, BTT argues that the Court should dismiss Pacific Fibre as a dispensable party and retain jurisdiction over Weyerhaeuser.  *ECF 29 at 3-5.*  BTT concurrently files a motion to dismiss Pacific Fibre should the Court determine it lacks personal jurisdiction over it.  *See ECF 28.*  If the Court were to dismiss Pacific Fibre, BTT argues that venue in this District would be proper under 28 U.S.C. § 1391(b)(1), as

Weyerhaeuser has not argued that this Court lacks personal jurisdiction over it. *Id. at 5*. Accordingly, BTT does not address whether venue is appropriate under § 1391(b)(2). *See ECF 29 at 5* ("If this Court agrees with Plaintiff that [Pacific Fibre] can be dismissed to retain jurisdiction then there is no need to address [Weyerhaeuser's] argument under 28 U.S.C. 1391(b)(2)"). BTT also argues that Weyerhaeuser has failed to meet its burden to show that a transfer for the convenience of witnesses is warranted. *Id. at 5-10*.

In reply, Weyerhaeuser argues that BTT's offer to dismiss Pacific Fibre is "a thinly-veiled attempt to sever the claims." *ECF 30 at 4*. Because BTT does not offer to dismiss Pacific Fibre with prejudice, Weyerhaeuser argues that BTT could initiate a separate action in Washington involving parallel issues. *Id. at 4-5*. This, Weyerhaeuser argues, would result in duplicative proceedings and a waste of judicial resources. *Id.* Weyerhaeuser argues that the Court should instead dismiss or transfer the case under 28 U.S.C. § 1406(a), or transfer the case for the convenience of witnesses and interest of justice under 28 U.S.C. § 1404(a). *Id. at 6-14*.

## B.   Discussion

Fed.R.Civ.P. 12(b)(3) permits a defendant to challenge a complaint
for improper venue.  If the plaintiff chooses an improper venue, the
Court may dismiss the action or transfer the case to a district where
venue would be proper.  28 U.S.C. § 1406.  Whether to dismiss for
improper venue or to transfer a case to a proper court is within the
district court's sound discretion.  *King v. Russell*, 963 F.2d 1301, 1304
(9th Cir. 1992); *Cook v. Fox*, 537 F.2d 370, 371 (9th Cir. 1976).

BTT has the burden of showing that venue is proper in this district.
*Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d
1109, 1126 (C.D. Cal. 2009) (citing *Piedmont Label Co. v. Sun Garden
Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  In ruling on a motion to
dismiss for improper venue, "[the] pleadings need not be accepted as
true, and facts outside the pleadings may be considered."  *Doe 1 v. AOL
LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

As recently amended by the Federal Courts Jurisdiction and Venue
Clarification Act of 2011, 125 Stat. 758, the governing statute provides
that a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . .; or

(3) if there is no district in which the action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  A defendant corporation is "deemed to reside...in any judicial district in which such defendant is subject to the court's personal jurisdiction..."  28 U.S.C. § 1391(c)(2).

Here, venue in this District cannot be premised on section 1391(b)(1) because not all of the defendants reside in Montana.  As discussed above, Pacific Fibre is not subject to this Court's personal jurisdiction, and does not reside in Montana.

Under § 1391(b)(2), "venue is proper in a judicial district if 'a substantial part of the events or omissions giving rise to the claim occurred' in that district."  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) (quoting 28 U.S.C. § 1391(b)(2)).  Generally, when relying on § 1391(b)(2), the plaintiff must establish venue as to each

claim and each defendant.  *Walker v. U.S. Dept. of Commerce,* 2012 WL 1424495 *1 (E.D. Cal. 2012).

Here, BTT cannot establish venue for Pacific Fibre because, as concluded above, Pacific Fibre is not subject to personal jurisdiction in Montana.  So while venue may be proper for Weyerhaeuser, which appears likely based on the record, BTT has not established venue "as to each claim and each defendant."  In any event, when venue is proper as to one defendant but not to other defendants, the district court is faced with three options: (1) dismiss the action pursuant to 28 U.S.C. § 1406(a), (2) transfer the entire case to another district where venue is proper for all defendants pursuant to 28 U.S.C. § 1406(a), or (3) sever the claims in the case, retain jurisdiction over the defendant for whom venue is proper, and transfer or dismiss the other claims.  *Barnes Group, Inc. v. Midwest Motor Supply Co., Inc.*, 2008 WL 509193 (S.D. Ohio 2008).

The Court concludes that dismissal, in this instance, is inappropriate.  "[I]n most cases of improper venue the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss the litigation." *Wright, Miller & Cooper, Federal Practice*

and Procedure: Jurisdiction 3d §3827; see also Kawamoto v. CB Richard

Ellis, Inc., 225 F. Supp. 2d 1209, 1214 (D. Haw. 2002).  This is because

"normally dismissal of an action that could be brought elsewhere is

'time-consuming and justice-defeating.'"  Miller v. Hambrick, 905 F.2d

259, 262 (9th Cir. 1990) (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463,

467 (1962)).  This leaves the Court with the options of transferring the

entire case to a proper district, or severing the claims and partially

transferring the action.

    BTT prefers dismissal of Pacific Fibre over a transfer of the entire

case to Washington, and separately moves to dismiss Pacific Fibre in the

event the Court finds, as it has, that personal jurisdiction is lacking.  See

ECF 29.  Weyerhaeuser urges the Court to transfer the entire action to

the Western District of Washington, where personal jurisdiction and

venue over both Defendants is proper.  ECF 30 at 4-5.  Weyerhaeuser

argues that severance and partial transfer would require the same issues

to be litigated in two different places, and would amount to a waste of

judicial resources.  The Court agrees with Weyerhaeuser.

    Many courts have recognized that severance is inappropriate when

"the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer[.]" *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 34 (3d Cir. 1993); *see also Celsion Corp. v. Stearns Mgmt. Corp.*, 2001 WL 55456 (D. Md. 2001) ("Where venue is appropriate as to some defendants but not others, courts prefer a transfer to an appropriate venue over severance of the case").  Here, Pacific Fibre's handling of the logs, log-weighing activities, and communication of the log weights are integrally related to BTT's claims of fraud, negligent misrepresentation, and breach of contract against both Defendants.  Under these circumstances, severance and partial transfer of this case would "require the same issues to be litigated in two places" and would result in an unnecessary waste of judicial resources.  *See Sunbelt Corp.*, 5 F.3d at 33-34.  Severance is, therefore, inappropriate.

Instead, the Court will transfer the entire case to the Western District of Washington under 28 U.S.C. § 1406.  That section provides that if venue is improper, the district court shall, "if it be in the interest of justice, transfer such case to any district or division in which it could

have been brought."  The fact that this Court lacks personal jurisdiction over Pacific Fibre is no bar to the Court's power to transfer the entire case to the proper court.  *See Goldlawr*, 369 U.S. at 466 ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not").

Transfer furthers the interests of justice.  Even where venue is proper, the district court may transfer a case to another jurisdiction where it may have been brought for the convenience of the parties and witnesses and in the interests of justice under 28 U.S.C. § 1404(a). Defendants, both Washington corporations with their principal places of business in Washington, would be subject to personal jurisdiction in Washington.  And, because both Defendants "reside" in the Western District of Washington for purposes of 28 U.S.C. § 1391(b)(1), venue is proper there.  28 U.S.C. § 1391(c).  Pacific Fibre's employees, Weyerhaeuser's employees knowledgeable about this case, and the UNITEC employees involved in the servicing, testing, and maintenance of the scales on which Pacific Fibre weighed the logs, are all located in

Washington.  Not only is this venue more convenient for these witnesses, but the Western District of Washington may compel attendance if necessary.

The Court is mindful of and gives some weight to BTT's position that it prefers dismissal of Pacific Fibre so that its claims against Weyerhaeuser may remain in its chosen home forum.  BTT, however, as the master of its own claims, has chosen to plead causes of action against both Defendants.  These causes of action integrally involve Pacific Fibre's conduct.  BTT has pled that the Pacific Fibre-procured "false and misleading load weights were meant to induce Plaintiff to accept less money from Defendant (Weyerhaeuser) than was actually owed." *ECF 1 at 3*.  In this posture, BTT's claims of fraud and breach of contract against Weyerhaeuser cannot be adjudicated without considering Pacific Fibre's conduct.  Furthermore, BTT does not offer to dismiss Pacific Fibre with prejudice, which allows BTT or Weyerhaeuser to initiate parallel litigation against Pacific Fibre in Washington.

## IV.  <u>CONCLUSION</u>

Based on the foregoing,

**IT IS ORDERED** that**:**

1.      This case is **TRANSFERRED** to the Western District of Washington, Tacoma Division.

2.      Weyerhaeuser's motion to dismiss or, alternatively, transfer *(ECF 8)* is **DENIED** insofar as it seeks dismissal, but **GRANTED** insofar as it seeks transfer.

3.      Pacific Fibre's motion to dismiss *(ECF 5)* is **DENIED AS MOOT.**

4.      Bar T Timber's Motion to Dismiss Pacific Fibre *(ECF 28)* is **DENIED AS MOOT**.

DATED this 13th day of September, 2013.

**/s/ Carolyn S. Ostby**
United States Magistrate Judge