HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BAR T TIMBER, <br><br>　　　　Plaintiff, <br><br>　　v. <br><br>PACIFIC FIBRE PRODUCTS, et al., <br><br>　　　　Defendants. | CASE NO. C13-5801 RBL <br><br> ORDER <br><br> [Dkt. #s 56, 62, 64, and 67] |

THIS MATTER is before the court on Defendant Weyerhaeuser's Motion for Summary Judgment [Dkt. #64] and Plaintiff Bar T Timber's Motion to Amend its complaint [Dkt. #56]. Defendant Pacific Fibre has been dismissed with prejudice and its Motion for Summary Judgment [Dkt. #62] is DENIED as moot.

Bar T is a Lewiston, Montana logging company. It agreed to sell, and Weyerhaeuser agreed to buy, its lodgepole pine logs. Bar T loaded its logs on rail cars in Montana and shipped them to Pacific Fibre's Longview, Washington, facility. Pacific Fibre weighed the logs and "chipped" them for Weyerhaeuser. Weyerhaeuser paid Bar T based on the weight of the logs received.

ORDER - 1

1    This dispute has, or had, two components: First, Bar T claims[1] that its log shipments
2  weighed more when they were loaded in Montana than they did when they were weighed for
3  payment in Washington, and that the defendants were thus "shorting" it on the shipments.  This
4  claim has been abandoned.  The second, remaining claim is that Weyerhaeuser breached its
5  agreement to purchase "all of the logs in the pipeline" as of April 25, 2012—approximately 40-
6  60 rail cars worth—causing $86,400 damages.
7    Weyerhaeuser's motion is based on its claim that Bar T cannot establish a breach of
8  contract claim because its owner, Dan Tudor, has effectively conceded that Weyerhaeuser did
9  not agree to purchase the disputed logs.

**A.  Facts**

The parties' agreement arose because the Montana mill that previously purchased Bar T's logs closed, and the price of logs (and the cost of shipping) narrowly permitted Bar T to sell its logs to a distant mill and still make a profit.  Weyerhaeuser and Bart T negotiated a simple contract, one they renewed and revised twice.  This dispute arises from the "quantity" term in the final (and only written) contract:

> Per our recent conversation, Weyerhaeuser NR Company, Longview, WA agrees to purchase lodgepole pine logs from Bar T Timber as follows:
>
> Lodgepole pine logs     $32.00 / green ton fob rail car
> Transportation mode    Rail
>
> This agreement is effective August 3, 2011 through December 31, 2011
>
> Purchased volume level is per mutual agreement on a monthly basis.
>
> If this meets with your understanding, please sign both copies of this amendment, return one copy and retain one for your files.

---

[1] Bar T has dismissed its claims against Pacific Fibre [Dkt. #76], and has agreed to dismiss all but one of its remaining claims against Weyerhaeuser: the breach of contract claim for failing to purchase all of the logs it harvested.  [*See* Dkt. #71]  Its Motion to Amend seeks primarily to (greatly) increase the damages it seeks for that alleged breach.

ORDER - 2

See Foley Dec., Dkt. #65 at Ex. A.

Bar T's principal, Tudor, testified in his deposition that he interpreted the agreement to mean that Weyerhaeuser was obligated only to purchase the logs it chose to purchase in a given month:

```
Q    What is your understanding of the meaning of the
sentence following that term?  It says, "Purchased volume
level is per mutual agreement on a monthly basis."
A    To me it would mean that every month, if they
want to increase the volume or lower the volume, that they
would be able to call me and tell me if they want more,
don't want any at all.  And per mutual agreement, it means
```

*See* Selby Dec., Dkt. #66, Ex. B. Despite the agreement's 2011 expiration date, the parties continued their arrangement into 2012.

On April 25, 2012, Tudor met with his Weyerhaeuser contact, Foley, and one of them told the other that they "wanted to take a break" from the agreement, and "reassess" the relationship. The parties dispute which of the men said this to the other, and for the purposes of this Motion the Court will accept Mr. Tudor's version. He claims that Foley wanted to take the break, but that he agreed—that he made a *binding oral agreement*—that Weyerhaeuser would purchase the logs "in the pipeline." He claims that amount was approximately 100-120 rail car loads, and that despite this agreement, Weyerhaeuser later "refused to accept" 40-60 of these loads. Instead, according to Tudor, Foley told him on June 1 that Weyerhaeuser would not take any more. Because Bar T seeks as damages the cost of removing the logs from the forest and disposing of them elsewhere, it is clear that Bar T does not claim that it loaded any of the remaining logs onto rail cars, or shipped them to Longview, or that Weyerhaeuser literally

"refused" to accept any shipment. Nevertheless, Bar T claims that the June 1 conversation[2]—"we will not take anymore"—is a breach of contract.

**B.  Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**C.  Bar T has not Established a Breach of Contract Claim**

Weyerhaeuser disputes, but accepts as true for purposes of its motion, the details of Tudor's claim.  Its argument, like the parties' agreement, is pretty simple: Tudor concedes that the agreement permitted Weyerhaeuser to tell him, on a monthly basis, how many logs it

---

[2] For his part, Foley claims that Tudor expressed his desire to "take a break and reassess" on the 25th, and claimed that he had "30 loads in the pipeline" at that time.  Foley claims his last contact with Tudor was on May 8, when, after receiving 15 or 20 loads in the interim, he told Tudor that the loads were still coming in "fairly strong," and Tudor told him that there were about 20 loads left.  He claims the shipments stopped shortly thereafter.  Oaas Decl., Dkt. #73, at Ex. B.

ORDER - 4

wanted—and that Weyerhaeuser had the contractual right to tell him "that they did not want any at all." Thus, it claims, even if the April 25 "break" was Foley's idea (and not Tudor's), and even if Weyerhaeuser did in fact "refuse" any log shipments (a proposition for which there is no evidence), it had the contractual right to do so, even under Bar T's interpretation of the deal.

Bar T's argument is also straightforward: there is a question of fact about whether Foley orally agreed to take all of the logs in the pipeline on April 25, and there is evidence (in the form of Tudor's testimony) that there were 100-120 rail cars in the pipeline, and Weyerhaeuser refused to buy the last 40-60.

To sustain a claim for breach of contract, a party must allege a duty imposed by contract, a breach, and damages proximately caused. *Nw. Indep. Forest Mfrs. V. Dep't of Labor & Indus.*, 78 Wash. App. 707, 712 (1995).

Bar T's breach of contract argument is flawed. His claim that there was some new and separately enforceable agreement reached on April 25 is not factually or legally supportable. The only evidence instead demonstrates that the parties were continuing a fairly informal, but clearly established, written, purchase and sale arrangement: $32 per green ton fob, at quantities mutually agreed upon on a monthly basis. Tudor admits that Weyerhaeuser had the right to tell him that they did not want any logs. It is not a breach of contract to do so; Weyerhaeuser had no duty to accept future logs. Nor is there any evidence that Weyerhaeuser in fact "refused" logs that were shipped to them; Bar T seeks damages for the cost of recovering and disposing of those logs in Montana.

Weyerhaeuser's Motion for Summary Judgment [Dkt. #64] on the remaining breach of contract claim is GRANTED and that claim is DISMISSED.

**D. Bar T's Motion to Amend is Futile**

Bart T seeks to amend its complaint only to allege another damage component— the additional cost to "remove and dispose" of the un-purchased but already-felled (and allegedly "ready to go" logs. Bar T claims this amount is $400,000.

Because this amendment seeks only additional consequential damages for the flawed breach of contract claim, the Motion to Amend [Dkt. #56] is DENIED. All other pending Motions are DENIED as moot.

***

Bar T's only remaining claim against the only remaining defendant is DISMISSED with prejudice and the case is terminated.

IT IS SO ORDERED.

Dated this 24th day of September, 2014.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE